The People of the State of New York, Respondent, v. William Park, Appellant.

*Adulterated food — " lemonade " made of sugar, tartaric acid and citric acid and oil from lemon rind.*

In an action brought to recover a penalty under section 41 of the Public Health Law (Laws of 1893, chap. 661), forbidding the manufacture and sale of adulterated food and beverages, and which provides by subdivision B, in paragraph 2, that adulteration exists " if any inferior or cheaper substance or substances have been substituted wholly or in part for the article," and in paragraph 4, " if it be an imitation or be sold under the name of another article," it appeared that the defendant sold a beverage known as " Eiffel Tower Lemonade; " that a circular advertising it contained the following statements: " 38 MILLIONS OF MESSINA LEMONS (the finest lemons the world produces) were used last year in the manufacture of Eiffel Tower Lemonade. It is by concentrating the lemons in the orchards where they are grown that the Eiffel Tower Lemonade can be supplied at this remarkable price," and also alluded to the beverage as " a perfect lemonade." The circular and the box in which the article was sold bore pictures of cut lemons.

The defendant showed that the beverage was manufactured of sugar, tartaric acid, citric acid and five per cent oil of lemon, which is a product of the rind of the lemon, and claimed that the oil of lemon came from a place near Messina, Italy, and that it took over 52,000,000 lemons to make the quantity required and used in the " Eiffel Tower Lemonade," for the year past.

It also appeared that natural lemon juice contained citric acid together with the other ingredients of the lemon and that tartaric acid was cheaper than either citric acid or lemon juice.

*Held,* that the defendant was liable for the penalty under both paragraphs of section 41 of the Public Health Law;

That the evidence established that the defendant was selling a preparation " under the name of another article" and was using a " cheaper substance " than that from which the natural lemonade was made;

That the public would assume from the advertisements that the beverage contained not only a part of the rind of the lemon but the juice as well;

That the word " concentrated," used in the advertising circular, was intended to convey the meaning and impression that the lemons were squeezed and the juice concentrated to form the article sold.

Appeal by the defendant, William Park, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of January, 1901, upon the verdict of a jury, and also from an order, entered in

said clerk's office on the 28th day of January, 1901, denying the defendant's motion for a new trial made upon the minutes.

*Julius M. Mayer*, for the appellant.

*Joseph N. Tuttle*, for the respondent.

O'BRIEN, J.:

This action was brought to recover a penalty for a violation of paragraphs 2 and 4 of subdivision B of section 41 of the Public Health Law (Laws of 1893, chap. 661), on the ground "that the defendant on or about the 20th day of July, 1900, did have, offer for sale and sell at 15 Jay street * * * a quantity of food or beverage under the name of Eiffel Tower Lemonade which food or beverage contained no lemon juice and in which food or beverage inferior and cheaper substances had been wholly substituted for the juice of lemons, and which food or beverage was an imitation of lemonade and was sold under the name of lemonade."

Section 41 of the Health Law, forbidding the manufacture and sale of adulterated food (including beverage) states in paragraphs 2 and 4 of subdivision B that adulteration exists "if any inferior or cheaper substance or substances have been substituted wholly or in part for the article" or "if it be an imitation or be sold under the name of another article."

It is conceded that on the 20th day of July, 1900, the defendant sold at 15 Jay street, "an article known as 'Eiffel Tower Lemonade;'" and we have in evidence an advertising circular respecting such preparation and also one of the marked boxes in which it was sold. The article purchased, it appears, was a dry granulated mixture of a yellowish color. Both the box and the circular bear pictures of cut lemons; and upon the circular are the words: "38 MILLIONS OF MESSINA LEMONS (the finest lemons the world produces) were used last year in the manufacture of Eiffel Tower Lemonade. It is by concentrating the lemons in the orchards where they are grown that the Eiffel Tower Lemonade can be supplied at this remarkable price. 10 PINTS for 10c. THE MEDICAL MAGAZINE says: The simplicity of this preparation is its great recommendation. In a very short period of time and

with a minimum of trouble, we have before us a delicious drink for summer use. A lemonade as refreshing and pleasant to the most critical taste and as harmless as it is possible to obtain. We can cordially commend it to the notice of the medical profession as well as to the general public." These latter words appear also upon the box which further says : " Directions must be followed to make a perfect lemonade ; " which directions are : " Place the contents of this bottle in a jug, add ¾ lb. granulated sugar, pour over the whole 1 pint of boiling water, stir till dissolved, when cold it is ready for use. This will make syrup enough for 10 pints."

The plaintiff's chemist testified that the preparation — which he purchased in the rear of defendant's store and not at the soda fountain — contained, according to his analysis, about forty-nine per cent of tartaric acid, forty-four per cent of cane sugar, five per cent oil of lemon and coloring matter and two per cent of water; that tartaric acid is a vegetable acid obtained from the grape, and that the oil of lemon, which was the only product of the lemon found, comes from the yellow portion of the rind of the lemon. The defendant showed that his formula for the mixture was about forty-eight per cent sugar, thirty-five per cent tartaric acid, twelve per cent citric acid and five per cent oil of lemon. It was testified that although lemon juice contains citric acid, " concentrated lemon juice differs from * * * pure citric acid in that it contains all the ingredients of the original lemon juice except the water, while citric acid is citric acid alone, a pure chemical substance."

From the testimony of the defendant it appears that the article in question was manufactured in this city of tartaric acid and citric acid purchased here, and his claim is that the oil of lemon (not the citric acid) came from a place near Messina, Italy, and that it took over 52,000,000 lemons to make the oil of lemon required and used in the " Eiffel Tower Lemonade " for the year past. The defendant's attorney upon the trial attempted to define the word " concentrated " as meaning gathered together and to show that the lemons were thus " concentrated " in the orchards of Italy. And the claim also was made that the box and circular advertised " a lemonade," not lemonade, and that " a lemonade " could be made with nothing but acids and no lemons whatever. In connection

with this point the plaintiff gave testimony that tartaric acid was cheaper than citric acid or lemon juice itself.

The appellant's claim is that he did not sell nor purport to sell lemonade, but "Eiffel Tower Lemonade," which, as the court charged, was a "distinctive arbitrary name;" that no liquid was sold and no one could possibly think he was buying ordinary lemonade, but "a lemonade;" and that 38,000,000 of lemons were needed, as matter of fact, in the manufacture of the article, and there was no deception whatever.

We think it is evident that the defendant was selling a preparation which the public would, from the advertisements, take to be made from lemons, containing not only a part of the yellow rind, but the juice as well. It was, therefore, being "sold under the name of another article." Moreover, the evidence shows that tartaric acid, which formed the greater part of the acid used, was a substance cheaper than lemon juice, or the acid in lemon juice, so that under both provisions of the law the defendant was clearly liable for the penalty. It is evident that the word "concentrated" should be taken in its ordinary sense, and, as here applied, was intended to convey the meaning and impression that the lemons were squeezed and the juice concentrated to form the article sold. In this sense the preparation was not concentrated lemon juice. We think that there can be no possible escape from the conclusion that the article was held out to the public as made from lemon juice, and that the beverage formed by its admixture with water was lemonade. As neither representation was true and the product was but an imitation or simulation of lemonade, the verdict is amply sustained.

We have examined the exceptions taken to the rulings upon evidence and to the judge's charge, and none of them requires discussion.

Judgment affirmed, with costs.

VAN BRUNT, P. J., RUMSEY, INGRAHAM and HATCH, JJ., concurred.

Judgment and order affirmed, with costs.